UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of POLYGON GLOBAL
PARTNERS LLP for an Order Pursuant to 28
U.S.C. § 1782 to Conduct Discovery for Use
in a Foreign Proceeding,                                    **OPINION AND ORDER**

                    Petitioner.                                    21 Misc. 364 (ER)

RAMOS, D.J.:

 Petitioner Polygon Global Partners ("Polygon"), an investment fund manager, brought

this action pursuant to 28 U.S.C. § 1782, seeking leave to serve subpoenas on the subsidiary of

an American global investment company, Kohlberg Kravis Roberts & Co. LP ("KKR"), and two

individuals, Jason Carss and Terence Gallagher (collectively, "Respondents").  The Court

granted Polygon's petition, and Respondents moved to quash the subpoenas.  For the reasons

discussed below, the Court DENIES the motion as to KKR and Gallagher but GRANTS it as to

Carss.  The parties are further instructed to meet and confer for the purposes of entering into a

protective order, as described in more detail in this Opinion.

## I. BACKGROUND

### a. The Instant Application

 Polygon is an investment fund manager that manages $1.4 billion on behalf of investors.

Doc. 12-5.  It manages two funds that owned minority shares and swap interests in MasMovil, a

Spanish telecommunications company.  Doc. 11, Memorandum in Support of Polygon's *Ex*

*Parte* Application Pursuant to 28 U.S.C. § 1782, at 1.  Polygon is currently challenging two

decisions of the National Securities Market Authority (*Comisión Nacional del Mercado de*

*Valores*, or "CNMV") regarding the takeover and subsequent delisting of MasMovil.  These

cases are pending in the National High Court of Spain (the "High Court").

###### b.   The Takeover and Delisting of MasMovil

Until recently, MasMovil was a public company domiciled in Spain.  *Id.* at 3.  On June 1,

2020, a company called Lorca launched an offer for all the shares of MasMovil at 22.50 EUR per

share.  Doc. 21, Decl. of Rafael Cristobal Murillo Tapia and Manuel Vélez Fraga

("Murillo/Vélez Decl."), at ¶ 8.  Under Spanish law, a company proposing the delisting of its

own shares from Spanish exchanges would ordinarily have to launch a mandatory takeover bid

for the whole capital share of the company.  *Id.* at ¶ 7.  However, this is not necessary if a

takeover bid has previously been made for the capital of the target company and the company

pursuing the bid:  (1) clearly expresses its intention to pursue the delisting of the shares of the

takeover target following completion of the bid; (2) justifies the price through a valuation report;

and (3) offers a standing purchase order, at the same price as the takeover bid, for the sale of

shares not already held by the bidder.  *Id.* at ¶ 7.   Lorca acquired and delisted MasMovil's

shares through this latter approach (the "MasMovil transaction.").  *Id.*

The CNMV authorized the takeover bid on July 29, 2020 (the "Takeover Decision").  *Id.*

at ¶ 8.  Lorca's offer was subsequently accepted by holders of approximately 86.4% of

MasMovil's shares on September 19, 2020.  *Id.*  Following the standard purchase order at 22.50

EUR per share, holders of an additional 12.8% of MasMovil's share capital sold their shares,

leaving Lorca as holder of approximately 99.2% of MasMovil's share capital.  *Id.* at ¶ 9.

MasMovil then approved the delisting of its shares from Spanish stock exchanges at a

shareholder meeting held on October 26, 2020.  *Id.* at ¶ 11.  The same day, it sought

authorization from the CNMV to delist its shares.  *Id.*  The CNMV authorized this delisting on

October 30, 2020 (the "Delisting Decision").  *Id.* at ¶ 12.

### c.  The Spanish Proceedings

The CNMV's decisions are subject to judicial review.  Polygon has initiated two proceedings in front of the Spanish National High Court:  One challenging the CNMV's Takeover Decision, and one challenging its Delisting Decision.[1]  Polygon alleges that the CNMV violated Spanish law, including "by authorizing the takeover (1) at an inadequate price; (2) without adequately reviewing relevant background materials; (3) based on a superficial analysis of relevant valuation information; and (4) while failing to take into account certain conflicts of interest."  Doc. 11 at 6.

### i.  Information Sought from KKR

Polygon seeks to serve subpoenas on KKR, an investment firm with an office in New York, for use in the Spanish Proceedings.  KKR is an indirect owner of Lorca.  Doc. 12-5 at 1. n.3.  Polygon alleges that KKR was involved in analyzing and formulating the Lorca bid.  Doc. 11 at 4.  It also alleges that KKR was one of several signatories to certain "additional compensation" agreements with MasMovil shareholders, which are at issue in the Spanish Proceedings.  *Id.*

The subpoenas request a wide variety of information related to the valuation of the take-over, including:  Materials related to a PricewaterhouseCoopers ("PwC") valuation report and a fairness opinion rendered by Goldman Sachs, documents relating to MasMovil board meetings concerning the transaction, and communications with the CNMV concerning MasMovil.  *See* Doc. 19, Memorandum in Support of Resp. Motion to Quash, App'x A.  Polygon also seeks deposition testimony on this topic from Jason Carss, KKR's Managing Director of Legal, and Terence Gallagher, KKR's Managing Director of Finance.  Doc. 11 at 4.

---

[1] The Court will refer to these as the "Takeover Challenge" and "Delisting Challenge," respectively, and collectively as the "Spanish Proceedings."

### ii.      The Takeover Challenge

Polygon brought the Takeover Challenge on September 30, 2020.  Doc. 21 at ¶ 25.

Under Spanish law, an appellant (in this case, Polygon) may institute a "judicial administrative

proceeding" challenging a government determination by filing a brief "application of claim."  *Id.*

at ¶ 15.  The court will then request the government entity to submit the administrative file

supporting its decision.  *Id.* at ¶ 16.  This file is shared with the appellant, which must then file a

"statement of claim" with the court within 20 days of its receipt of the administrative record.  *Id.*

at ¶ 17.  However, if the appellant determines that the administrative file is incomplete, it may

file a motion to augment the file, which stays the appellant's deadline to file the statement of

claim.  *Id.* at ¶ 18.  The Spanish court will ultimately rule on whether the material with which an

appellant seeks to augment the record will be admitted.  *Id.* ¶ 20.

On October 28, 2020, Polygon was granted access to the CNMV's administrative file in

the Takeover Challenge, and subsequently requested that the file be augmented with numerous

documents.  *Id.* at ¶ 26.  Much of the information sought by Polygon as part of its request

overlaps with the information sought through the subpoenas in the instant case.  *See* Doc. 19 at

App'x 1.  The High Court first granted Polygon's request to augment the record, but reversed its

decision on January 15, 2021 following a reconsideration request.  In this decision, it held that

"[Polygon] did not prove that the documents missing from the administrative case files . . .

prevent it from exercising its right to defense . . . ."  *See* Doc. 21-3 at 9.   Polygon did not appeal

this decision, and is now awaiting the High Court's decision on other discovery determinations.

Doc. 21 at ¶¶ 31–33.

### iii.      The Delisting Challenge

Polygon brought the Delisting Challenge on November 25, 2020, and was granted access

to the CNMV's administrative file on January 20, 2021.  Doc. 21 at ¶ 34.  Polygon again

requested to augment the administrative file with certain documents on January 22, 2021, though

it made this request regarding a much narrower set of documents than in its analogous request in

the Takeover Challenge.  *Id.* at ¶ 35.  The High Court has not yet rendered a decision on this

request.

Once the High Court rules, Polygon will have 18 business days to file its statement of

claim.  *Id.* at ¶ 38.  Polygon intends to introduce the requested materials into evidence in the

Delisting Proceeding with its statement of claim.  Doc. 13, Decl. of Jesús Almoguera García, at ¶

25.  However, it also argues that, to the extent it is unable to introduce these materials directly

into the proceedings, such materials would still aid its analysis of the CNMV's decisions, and

could potentially support expert submissions.  *See* Doc. 25, Pet'rs. Opp. at 7.

### iv.    The Section 1782 Proceedings

Polygon moved *ex parte* for leave to serve these subpoenas on March 23, 2021.  The

Court granted its application on March 25, 2021, and set a schedule for the parties to meet and

confer to address any objections to the subpoenas, as well as a schedule for moving papers

regarding any motion to quash.  Doc. 14.  Respondents filed this motion to quash on April 16,

2021.  Doc. 18.

Attached to Respondents' moving papers is a letter to the CNMV from Carss and Thomas

Weber, managing partner of another KKR-affiliated entity, advising it of this action and seeking

"[its] opinion or, where appropriate, express authorization to provide the aforementioned

[discovery]."  Doc. 20-1 at 9.  The CNMV responded the next day, stating that "[t]he request

made before [the Court] should be rejected in its entirety," citing Polygon's prior attempt to

request similar information in the Takeover Challenge, as well as confidentiality concerns.  Doc.

20-2 at 10.

Polygon has also initiated a similar § 1782 action in the District of Rhode Island, seeking discovery from Providence Equity Partners, an entity that is also an indirect owner of Lorca.  *See* Doc. 31.  On May 11, 2021, the Honorable William E. Smith, U.S. District Judge for the District of Rhode Island, denied Providence Equity Partners' motion to quash in that proceeding.  *See In re Polygon Global Partners LLP*, No. 21 Misc. 007 (WES), 2021 WL 1894733 (D.R.I. May 11, 2021).

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1782(a), "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation."  To obtain a court order for discovery under Section 1782, an applicant must establish the following:

> "(1) that the person from whom discovery is sought reside[s] (or [can] be found) in the district of the district court to which the application is made,
>
> (2) that the discovery [is] for use in a proceeding before a foreign tribunal, and
>
> (3) that the application [is] made by a foreign or international tribunal or 'any interested person.'"

*In re Edelman*, 295 F.3d 171, 175–76 (2d Cir. 2002) (citation omitted).

If these statutory factors are met, the Court "may grant discovery under § 1782 in its discretion."  *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (citation omitted).  "To guide district courts in the decision to grant a Section 1782 petition, the Supreme Court in *Intel* [*Corp. v. Advanced Micro Devices, Inc.*], 542 U.S. 241 [(2004)], discussed non-exclusive factors . . . to be considered in light of the 'twin aims' of Section 1782:  'providing

efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Id.* (citation omitted).

These four factors are:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence;"

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and

(4) "whether the discovery request is "unduly intrusive or burdensome.""

*Intel*, 542 U.S. at 264–65.

No single *Intel* factor is dispositive, or should be given more weight than the others.

*Marubeni America Corp. v. LBA Y.K.*, 335 F. App'x 95, 97 (2d. Cir. 2009)

## III.   DISCUSSION

### a.   Section 1782's Statutory Requirements

There is no dispute that Polygon is an "interested party" in the Spanish Proceedings. Accordingly, the Court limits its analysis to the first and second statutory factors.

### i.   "Found" in this District

The definition of "resides or found" under § 1782 "extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2020). The "relevant 'forum' [for § 1782 analysis] is limited to the district in which the district court sits." *Id.* at 529 n.10 (*citing* 28 U.S.C. § 1782(a)).  Thus, the Court has jurisdiction over

Respondents if they are subject to personal jurisdiction in this District.  This can be met by showing that the Court has either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).  If no general jurisdiction is found, specific personal jurisdiction in the § 1782 context may be sufficient "where the discovery material sought proximately resulted from the respondent's forum contacts."  *In re del Valle Ruiz*, 939 F.3d at 530 ("That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all.").

There is no dispute that KKR, which has an office in Manhattan, is properly "found" in this district for § 1782 purposes.  However, Respondents argue that, although Carss and Gallagher work for KKR, they are not properly "found" in the S.D.N.Y. because they do not personally reside in the District, and they have not performed work relating to the KKR transaction while physically present in the S.D.N.Y.  Doc. 19 at 12.

Respondent's objections based on physical presence are unavailing.[2]  It is true that, because Carss and Gallagher do not personally reside in the S.D.N.Y., the Court likely has no general jurisdiction over them for § 1782 purposes.  *See Reich v. Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014) (absent exceptional circumstances, a court's general jurisdiction over an individual is determined by domicile).  However, the Second Circuit has explicitly rejected the premise that the meaning of "found" in § 1782 is coextensive with *general* personal jurisdiction. *In re del Valle Ruiz*, 939 F.3d at 527–28.[3]  Thus, the Court must nevertheless evaluate whether serving these subpoenas on Carss and Gallagher would be consistent with specific personal

---

[2] However, as discussed in more detail *infra*, in light of Carss' representation that he "do[es] not specifically recall working on, or providing advice relating to, the transaction," at all aside from being a signatory to Respondents' letter to the CNMV informing it of this action, *see* Doc. 24 ¶ 2, the Court will quash the subpoena as to Carss in its discretion under the *Intel* factors.

[3] While Respondents rely on *In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006), this case preceded *In re del Valle Ruiz*, which clarified the extent of § 1782's "resides or is found" language.

jurisdiction.  To conduct this analysis, the Court must first assess "if the individual or entity has

purposefully directed his activities at ... the forum" and whether "the litigation ... arise[s] out of

or relate[s] to those activities."  *Id.* (internal quotation marks and citation omitted).  Second, the

Court must "determine whether the assertion of personal jurisdiction would comport with fair

play and substantial justice."  *Id.* (citation omitted).

Carss and Gallagher are named individually because they are KKR employees who serve

on the board of KKR Europe V S.á rl, a KKR affiliate involved in the bid.  Doc. 11 at 2.

Polygon alleges that, in this capacity, they were involved in analyzing and formulating Lorca's

bid.  Carss and Gallagher do not dispute that they are KKR employees and are associated with

KKR's New York offices, which are located in the District.  However, they both note that they

stopped commuting regularly to Manhattan in March 2020 due to the COVID-19 pandemic—

indeed, Carss states he has not commuted to the District for work at all.  Doc. 23 at ¶ 4; Doc. 24

at ¶ 3.  Thus, they argue that there can be no discovery material that "proximately resulted" from

[their] forum contacts, because they did not specifically perform work related to the takeover bid

while present in the S.D.N.Y.  *See* Doc. 19 at 12 (citing *In re del Valle Ruiz*, 393 F.3d at 530).

While Respondents raise a novel argument appropriate to these pandemic times, physical

presence in a jurisdiction is not a prerequisite for the exercise of specific personal jurisdiction, so

long as the party has taken actions that create "create a 'substantial connection' with the forum

State" and the exercise of jurisdiction is otherwise consistent with due process.  *See Burger King

Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  This is particularly true when those actions

"create[] continuing obligations between [the party] and residents of the forum" and show that

the party "manifestly has availed [itself] of the privilege of conducting business there."  *Id.* at

476 (internal quotation marks omitted).

Here, both Carss and Gallagher publicly hold themselves out to be associated with KKR's New York office, which is located in this District. *See* Doc. 11 at 4 n.4–5. Polygon alleges that their knowledge of the transaction stems from their responsibilities as KKR employees and board members of KKR Europe V S. á rl, a KKR affiliate.[4] *Id.* at 4. Thus, any work they would have performed relating to the transaction—including, for example, the analysis of due diligence materials—would have been inextricably tied to their employment as part of KKR's New York-based team, even if it was not performed while they were physically present in this District. *See* Doc. 12-7 at 58–59 (noting the retention of KKR to analyze the viability of the bid). Moreover, Gallagher acknowledges that he has commuted into the district for work 5–7 times since the COVID-19 pandemic. Doc. 24 at ¶ 3. Simply put, this is a far cry from a situation in which one's contact with the forum jurisdiction is "random, fortuitous, or attenuated." *Burger King Corp*, 471 U.S. at 475 (internal quotation marks omitted). The Court therefore finds the ongoing, public association of Carss and Gallagher with KKR and its New York office sufficient to create "continuing obligations" between them and KKR (a forum resident) for the purposes of personal jurisdiction—at least regarding this action, which arises from their business activities as KKR employees. *Id* at 476; *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 128 (2d Cir. 2002) (weighing a Puerto Rican law firm's history of solicitation of New York clients and maintenance of other New York contacts in relation to a dispute about a revolving credit agreement involving New York parties, even though the firm's alleged malpractice occurred in Puerto Rico).[5]

---

[4] KKR has not argued that the individual Respondents' association with KKR Europe V S. á rl, which is incorporated in Luxembourg, is distinguishable from their employment with KKR for the purposes of personal jurisdiction, and the Court assumes that it is not.

[5] While the Court is not aware of cases in this District or Circuit to have squarely addressed whether, under similar circumstances, an ongoing employment relationship alone is sufficient to bestow personal jurisdiction over a telecommuting employee, other district courts to have addressed the issue have generally found jurisdiction in more

The Court also finds that the exercise of personal jurisdiction over Carss and Gallagher would not offend due process.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice") (citations omitted).  In making this assessment, the Court considers "the burden on the defendant," "the interests of the forum [jurisdiction]," "the plaintiff's interest in obtaining relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."  *Asahi Metal Industry Co., Ltd. v. Sup. Ct.*, 480 U.S. 102, 113 (1987).  These factors weigh in favor of exercising jurisdiction.  According to the certificates of service submitted by Polygon, Respondents both reside in the Eastern District of New York.  Doc. 26-2, Doc. 26-3.  As one might expect given the location of their employer, they are in commuting distance of this District, and any burden of travel would thus be *de minimus*.  Moreover, because Carss and Gallagher hold themselves out to be based in KKR's New York office, it cannot be said that it would be unforeseeable for them to be "haled into court" in this District, at least regarding KKR business.  *See Burger King Corp.*, 471 U.S. at 486 (citation omitted).  Given the Court's uncontested jurisdiction over KKR, the Court also finds that this dispute would be more efficiently resolved if all Respondents appeared in this District, rather than splitting proceedings between here and the E.D.N.Y.

---

tenuous cases than this.  *See, e.g., M3 USA Corp. v. Hart*, ---F. Supp. 3d---, 2021 WL 308162, at *9–10 (E.D. Pa. Jan. 29, 2021) (finding specific personal jurisdiction over an employee in a breach of contract action who worked remotely for a Pennsylvania-based company for years, when the company's operations were focused in Pennsylvania and her "business responsibilities had both national and international reach");  *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs. LLC*, No. 17 C 923, 2017 WL 4340123, at *4 (N.D. Ill. Sept. 29, 2017) (Illinois had jurisdiction over defendant employee who worked remotely in Oregon when "all of the allegations against [employee] stem[med] from her employment," and involved regular communication with the company's Illinois office); *cf. TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 527–28 (E.D. Pa. 2019) (no specific jurisdiction in Pennsylvania when employee was hired solely as a sales representative for the Houston, Texas region of a Pennsylvania company, conducted no business activities in Pennsylvania, and was accused of stealing a list of Texas customer information).  Notably, none of these cases dealt with the situation here, where the only stated reason for telecommuting is the exceptional circumstance of the COVID-19 pandemic.

Finally, in their opening brief, Respondents argued that they had not been properly served.  Doc. 19 at 12.  Polygon's certificate of service shows that copies of the subpoenas were originally delivered together to KKR's corporate office and left with security personnel, who indicated that she was authorized to accept service on their behalf.  Doc. 26-1.  In its Opposition brief, Polygon attached additional certificates of service indicating that it had also mailed copies of the subpoenas to Gallagher and Carss' last known addresses.  Docs. 26-2, 26-3.  Respondents did not make any further arguments regarding the adequacy of service in their reply brief.

While it appears that Polygon's initial attempt at service at KKR's offices did not strictly comport with Rule 45's instructions to "deliver[] a copy [of a subpoena] to the named person," the Court finds that its subsequent service by mail was sufficient under the circumstances of this case.  *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116 (PGG), 2009 WL 1313259, at *2–3 (S.D.N.Y. May 11, 2009) (granting leave to serve [the witness] by certified mail because doing so would be "reasonably calculated under the circumstances to provide [witness] with both notice and an opportunity to prevent objections");  *see also Medical Diagnostic Imaging, PLLC v. Carecore National, LLC*, Nos. 06 Civ. 7764 (CS)(THK), 06 Civ. 13516 (VM)(THK), 2008 WL 3833238, at *2–3 (S.D.N.Y. Aug. 15, 2008) (granting leave to serve nonparty with a deposition subpoena by delivering a copy of the subpoena to his place of employment, mailing a copy by first-class mail, and attaching a copy of the court's order to subpoena, where there was "no question that [nonparty] ha[d] notice that his deposition [was] being sought").  Indeed, Carss and Gallagher did not make further objections to the adequacy of service after Polygon mailed the subpoenas to their last known places of residence.  Therefore, the Court will not quash the subpoena based on improper service.

ii.      **"For Use In" a Foreign Proceeding**

To establish that a document is "for use" in a foreign proceeding, courts focus on the "*practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l, Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original).  A petitioner need not show the discovery is necessary to prevail in the proceeding—only that it will be "used at some stage." *Id.* (citing *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015)).  Nor is a petitioner required to establish that the materials sought will be admissible in the foreign proceeding.  *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012).

Respondents argue that the subpoenas cannot be "for use" in the Spanish Proceedings because the High Court has declared the information they seek to be "irrelevant" to the Takeover Challenge.  Doc. 19 at 10–11.  This argument is based on the High Court's January 15, 2021 determination that "[Polygon] did not prove that the documents missing from the administrative case files . . .  prevent it from exercising its right to defense with the proper guarantees."  Doc. 21-3 at 9.  While the January 15 High Court order did not explicitly state that the documents were "irrelevant," the briefing surrounding the order focused on the potential relevance of the information sought, and thus Respondents argue that the High Court's decision must be understood as a determination that the materials are irrelevant.  Polygon contests that the High Court's ruling was narrower, and constituted only a determination that the materials were not part of the administrative file or were confidential.  *See* Doc. 25 at 7; Doc. 27 at ¶ 32.

Polygon has met its burden to show that the materials sought would be "for use in" the Spanish Proceedings.  Crucially, Polygon will seek to introduce materials acquired through this proceeding into evidence in the Delisting Challenge.  Doc. 25 at 7.  This alone demonstrates the

"practical ability" to place the documents in front of a foreign tribunal.  *See In re Accent Delight Int'l, Ltd.*, 869 F.3d at 131.  While the High Court may ultimately find some or all of the evidence to be inadmissible, this is the High Court's determination to make, not this Court's.  *See Brandi-Dohrn*, 673 F.3d at 84 (reversing denial of § 1782 application on the basis that the discovery sought would not be admissible).  Because Polygon is entitled to make efforts to attach this information to their statement of claim in the Delisting Challenge, it is entitled to seek that information pursuant to § 1782.

The Court also cannot find that the January 15, 2021 decision amounts to a conclusive determination that the information sought is "irrelevant."  Under similar circumstances, the District of Rhode Island recently declined to characterize the High Court's decision this way, noting that the High Court only held that "the CNMV was not required to provide the documents because they were not part of the CNMV's case file and because Polygon had failed to meet its burden of demonstrating a need for confidential documents."  *In re Polygon Global Partners LLP*, No. 21 Misc. 007 (WES), 2021 WL 1894733, at *3 (D.R.I. May 11, 2021).  The Court agrees that, while relevance may well have figured into the High Court's determination, it would be inappropriate to read beyond the text of the decision and speculate about the High Court's rationale.  This is particularly true given that Polygon has also sought similar documents via third-party discovery in the Takeover Proceeding, on which the High Court has not yet ruled.  Doc. 21 at ¶¶ 31–33.  Thus, the Court will refrain from engaging in a "speculative foray[]" into how the High Court will rule on that question, or how it might receive evidence produced pursuant to these subpoenas in the event Polygon attaches them in the Delisting Challenge.  *See Mees*, 793 F.3d at 299; *Brandi-Dohrn*, 673 F.3d at 82.

### b. The Intel Factors

While Polygon has met § 1782's statutory requirements, the Court must also consider the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

### i.    The Person from Whom Discovery is Sought

The first *Intel* factor requires consideration of whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.  Thus, courts considering this factor have assessed not just whether the respondent is literally a party to the foreign proceeding, but also whether the information sought is within the jurisdictional reach of the foreign court, and whether applicants "for all intents and purposes ... seek[ ] discovery from ... their opponent in the [foreign] litigation."  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*., 376 F.3d 79, 85 (2d Cir. 2004) (citing *Intel*).

Here, it is undisputed that KKR is not a named participant in the Spanish Proceedings. Rather, it is affiliated with various funds and vehicles that indirectly own Lorca.  However, Respondents argue that, because Lorca and MasMovil are defendants in the Spanish Proceedings, Polygon could obtain much of the discovery sought through those proceedings, either through Lorca or MasMovil or directly from KKR through various third-party procedures. Respondents cite to the declaration of Spanish attorneys who state that (1) because KKR is a party "involved in the legal relationship at stake," it could be subject to certain discovery obligations; and that (2) even if this condition is not met, KKR could still be subject to discovery under a Spanish law permitting the third-party production of documents that are "transcendental

for the purposes of issuing judgement [sic]." *See* Doc. 21, Murillo/Vélez Decl. ¶¶ 40–48; *see also* Doc. 30, Murillo/Vélez Reply Decl. at ¶¶ 17–21.  Polygon disputes Respondents' view of the appropriate legal relationship at issue, citing the declaration of Spanish attorneys who take a contrary view.  *See* Doc. 27 at ¶ 36.

First, assuming *arguendo* that some of the information sought is available directly through MasMovil or Lorca, this would not bar discovery of the materials sought through this proceeding.  *See In re Top Matrix Holdings Ltd*., No. 18 Misc. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (ordering discovery even when the evidence was likely in the possession of a parent company that was subject to the jurisdiction of a foreign court).  *In re Top Matrix Holdings* relied on *In re del Valle Ruiz* in noting that a parent company, which was a participant in the foreign proceedings, was treated as separate legal entity for the purposes of this analysis.  *See id.* at *5 (*citing In re del Valle Ruiz*, 939 F.3d at 523); *see also In re Polygon Global Partners LLP*, 2021 WL 1894733, at *4 (focusing, in analogous proceedings, on the distinct legal identity of another of Lorca's partial owners and finding that this factor weighed in Polygon's favor).  Here, the relationship between KKR and Lorca and MasMovil is even more attenuated than a parent-subsidiary relationship, and it is undisputed that KKR is not formally a party to the Spanish Proceedings.

Second, the Court is not in a position to assess who has the better view regarding whether, under Spanish law, KKR was "involved in the legal relationship at stake" in the MasMovil transaction; indeed, our Circuit precedent counsels against efforts to make such assessments.  *See Europa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) (cautioning district courts against attempts to glean the accepted practices of other nations from conflicting evidence).  In the absence of authoritative proof otherwise, the Court therefore

assumes that if KKR could be compelled to produce evidence in the Spanish Proceedings at all, it would do so as a third party, not as a function of its relationship to Lorca or MasMovil.  *See* Doc. 21 at ¶ 45.  To this point, Respondents cite a Spanish provision that permits the High Court to compel production of documents from third parties under certain circumstances.[6]  However, Polygon has not made any third-party request to KKR through this provision, and the Court cannot know how such a request would be received in the High Court.[7]  While it is proper to consider whether a foreign tribunal "has jurisdiction over" the § 1782 respondent such that it "can itself order [the respondent] to produce evidence," the mere possibility that KKR could, at some point, be subject to a third-party discovery provision in Spain is too attenuated a connection to the Spanish Proceedings to significantly weigh in its favor under this factor.  *See* 542 U.S. at 264.  To find otherwise would be to go beyond a straightforward assessment of whether KKR is actually or functionally a party to the Spanish Proceedings, and instead require the Court assess how the High Court might hypothetically apply its third-party discovery rules. Thus, this factor weighs in Polygon's favor.

### ii.    The Receptivity of the Foreign Government

Courts must also consider "the receptivity of the foreign government" to "U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  In this Circuit, this factor requires consideration of "only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of [S]ection 1782 . . . as embodied in a forum country's judicial, executive or

---

[6] Respondents cite to Article 330 of the Spanish Law on Civil Procedure, which states that "non-litigant third parties shall solely be required to exhibit documents owned by them and sought by one of the parties where the court should deem that knowledge of such documents is transcendental for the purposes of issuing judgement [sic.]."  The Murillo/Vélez Decl. states that the aforementioned "transcendental" standard applies when the "High Court deems the document to be crucial to hand down its decision (ultimately, that the document is relevant for the judgment)." Doc. 21 at ¶ 44.

[7] Polygon's failure to seek discovery from KKR in this capacity is not fatal to its application because § 1782 imposes no exhaustion requirement.  *See In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *6.

legislative declarations." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Courts are discouraged from speculating about the accepted practices and attitudes of foreign nations. *Id.* at 1099.

Respondents urge the Court to defer to the letter submitted by the CNMV, an agency within Spain's executive branch and the party whose determinations are under review in both Spanish Proceedings. The CNMV requests that the Court deny the application in its entirety. *See* Doc. 20-2 at 10. In its letter, the CNMV opposes this application on two grounds: First, it states that granting discovery would undermine the High Court's ruling regarding the relevance of similar documents sought by Polygon, and second, it argues that certain of the documents sought would be subject to a duty of secrecy under Spanish law, specifically Article 248 of Royal Legislative Decree 4/2015 ("Art. 248"). *Id.*

Relying on this letter, Respondents analogize this case to *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79 (2d Cir. 2004). In *Schmitz*, the court found that the *Intel* factors weighed against discovery when the German Federal Ministry of Justice and the Public Prosecutor in Bonn, Germany wrote to the court to argue that permitting § 1782 discovery would "jeopardize [an] ongoing German criminal investigation" and "jeopardize German sovereign rights." 376 F.3d at 84. However, German authorities also left open the possibility that these documents would be made available to the petitioners later in the proceedings. *Id.* The court also noted that the documents sought were already subject to a protective order in this District. *Id.* at 82.

While the Court is mindful of the concerns raised by the CNMV, it finds that these can be adequately addressed by a protective order, as discussed in more detail *infra. See Euromepa*, 51 F.3d at 1101 ("[W]e think that it is far preferable for a district court to reconcile whatever

misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.").  First, the CNMV's warning that a discovery order would "attribute jurisdiction that corresponds to . . . the National High Court" does not amount to "authoritative proof" that the High Court would reject the evidence sought, as this statement did not come from the High Court itself.  *See* Doc. 20-2 at 10.  While Respondents are correct that the court in *Schmitz* properly relied on concerns raised by German prosecutors rather than by a German court, these concerns related directly to investigations being conducted by those prosecutors; in other words, the court's decision was not predicated on the prosecutors' representations about the German judiciary.[8]  Rather, as discussed above, the Court can only find that the High Court has ruled that similar evidence sought did not need to be made part of the administrative file in the Takeover Challenge.  Thus, the Court is not obligated to defer to the CNMV's characterization of the High Court's decision.  *See In re Polygon Global Partners LLP*, 2021 WL 1894733 at *5 (declining to find that an analogous CNMV letter weighed in favor of disclosure).

Second, the CNMV argues that some of the evidence sought would be subject to a duty of secrecy under Spanish law.  Doc. 20-2 at 10.  Polygon disputes the extent to which this duty extends to KKR.  Doc. 25 at 19–20.  However, even assuming that Respondents and the CNMV are correct, Respondents do not argue that the entirety of documents sought would be subject to the duty of secrecy, and have not shown any reason why this issue cannot be adequately addressed by a protective order, given that KKR may still lodge objections based on privilege in the ordinary course.  *See Euromepa*, 51 F.3d at 1101; *cf. Schmitz*, 376 F.3d at 85 (declining to

---

[8] Indeed, the Court in *Schmitz* also had before it two declarations from a German judge, noting that the German court would consider the discovery if it were put before it, but that "the court's willingness to consider such documents was indeed no declaration that the Court supported—in opposition to other authorities of the Federal Republic of Germany—the production of such documents."  *Id.* at 82.  No analogous declaration exists here.

tailor via a protective order when the documents sought by movants were already subject to another protective order in litigation in this District).

Finally, while Respondents argue that *Schmitz* compels the Court to quash the subpoena in its entirety, the Second Circuit's holding was not so broad. Rather, the court in *Schmitz* found that the trial court had not abused its discretion by denying the discovery request, including by finding that there was no way to effectively tailor an order in light of the pre-existing American protective order and German law enforcement authorities' concerns. *Id.* at 84–85. Here, however, the sensitivity of the discovery sought appears to hinge on the extent to which certain documents are subject to a Spanish duty of secrecy. This concern is best addressed through the parties' targeted negotiations on this topic. Thus, while this factor leans in Respondents' favor, it does not merit a complete quashing of the subpoenas. Rather, the parties are instructed to negotiate a protective order that would cover materials that are protected by the duty of secrecy provided for in Article 248, and KKR is instructed to maintain a privilege log as necessary.

### iii.      Circumvention of Foreign Discovery

The third *Intel* factor requires consideration of whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The evidence requested does not need to be admissible or discoverable in the foreign tribunal. *See In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *6. On the other hand, however, courts have "routinely rejected Section 1782 motions under Factor Three when applicants have already exhausted available remedies in foreign tribunals and seek another 'bite at the apple' after having already been denied recourse." *Id.*

Respondents' arguments here are similar to the arguments they raised regarding the statutory "for use" element. They argue that, because the High Court previously rejected

Polygon's attempt to supplement the administrative record in the Takeover Challenge, additional efforts to seek this discovery would amount to a circumvention of Spanish discovery rules.  Doc. 19 at 17–18.  However, as previously discussed, the Court cannot find on text of the High Court's decision that Spanish courts would "*prohibit*[] the discovery of those documents" and their attachment to the complaint.  *In re Accent Delight Int'l Ltd*., 791 F. App'x 247, 251 (2d Cir. 2019) (emphasis in original).  Rather, the High Court only held that "[Polygon] did not prove that the documents missing from the administrative case files and that should be a part thereof prevent it from exercising its right to defense . . . ."  Doc. 21-3 at 9.

Respondents, through the Murillo/Vélez declarations, also argue that Polygon could have requested this information directly from KKR in the Takeover Challenge (and may have the opportunity to seek it in an appeal as well), but has made the requests through § 1782 to avoid "a presumably adverse outcome."  Doc. 21 at ¶ 45; *see also* Doc. 30 at ¶ 22.  Whatever Polygon's likelihood of success in seeking some or all of these materials in Spain—a topic on which the Court will not speculate—*Intel* imposes no administrative exhaustion requirement.  *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *6.  Thus, factor three weighs in Polygon's favor.

### iv.    Burden

The Court may also decline to compel discovery when faced with "unduly intrusive or burdensome requests."  *Intel Corp.*, 542 U.S. at 265.  Respondents first urge the Court to quash the subpoenas under this factor for many of the reasons already discussed in this Opinion, including that the information might be obtainable from MasMovil and Lorca, that the Spanish High Court has purportedly declared it irrelevant, and due to privacy concerns.  Doc. 19 at 22–24.  As already discussed, the Court finds that Respondents' concerns regarding these issues are adequately addressed through a protective order that provides appropriate protection to, *inter*

*alia*, material that is subject to the duty of secrecy under Art. 248.  The parties are directed to meet and confer regarding an appropriate protective order by June 15, 2021.  Moreover, to the extent Respondents seek to withhold any of these items as privileged on their own behalf, they may do so while providing a privilege log, as in the ordinary course of discovery.

Second, Respondents note that Carss has testified that he has no recollection of working on the bid or takeover at all.  Doc. 24 at ¶ 2.  Polygon has not proffered evidence sufficient to rebut Carss' testimony, as it points only to a reference to his service on the board of KKR Europe V S. á rl.  *See* Doc. 25 at 21 (citing Doc. 12-7 at 42).  Thus, the Court finds that taking discovery from Carss would have little probative value, and quashes the subpoena as to Carss.  *See In re Top Matrix Holdings Ltd*, 2020 WL 248716, at *7 (denying discovery as to individual who could not recall key details regarding events on which discovery was sought); *see also Lee v. Kucker & Bruh LLP*, No. 12 Civ. 4662 (BSJ)(JCF), 2013 WL 680929, at *2 (S.D.N.Y. Feb. 25, 2013) (quashing subpoena where potential deponent had no first-hand knowledge of material sought, and citing cases).

Third, the Court will not completely quash the subpoenas based on KKR's assertion that they are "not … time bound" or are without "territorial limit."  Doc. 19 at 23 (citing *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *7 (S.D.N.Y. Nov. 8, 2013), *abrogated by In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019)).  Respondents have not identified with particularity why compliance would be burdensome.  *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (declining to quash subpoena where respondent did not set forth the manner and extent of the burden it imposed).  While Respondents are correct that several of the requests seek "all documents" of certain categories, the requests are generally tailored to the MasMovil transaction, thus mitigating the risk of limitless responsive discovery.

To the extent that any of the requests encompass non-privileged information that is unrelated to the MasMovil transaction, or impose a more particularized burden to KKR, the parties are instructed to meet and confer to narrow the scope of such requests.

Fourth, Respondents argue that compliance with the subpoenas would unfairly place on KKR the risk of any noncompliance with Art. 248's duty of secrecy and other European privacy regulations.  In particular, they note that that some of the discovery sought would likely be subject to General Data Protection Regulation (EU) 2016/679 (the "GDPR"), which imposes additional regulations regarding the disclosure of personally identifying information, regardless of whether that information is designated as confidential or subject to a protective order in this Court.  *See* Doc. 21 at ¶¶ 62–67.  However, while the Court acknowledges that KKR's efforts to comply with the GDPR will likely impose some additional compliance costs, it has not demonstrated that compliance would impose a financial burden on KKR that is disproportionate to the needs of the case.  *See In re Polygon Global Partners LLP*, 2021 WL 1894733, at *6 (finding that similar production sought from Providence Equity Partners was not likely to impose significant expense).

Finally, Respondents separately argue that Polygon should indemnify KKR in the event it incurs any expenses in connection with breaches of European law through its compliance with this Order.  *See* Doc. 19 at 25 (citing *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018) (requiring indemnification for any breaches of European privacy law)).  While the Court does not believe this is a significant possibility, it agrees that incurring any such liability in response to this Order would be unfair.  Thus, to the extent that KKR or Gallagher incur any liability resulting from fines for breach of European privacy law, Polygon must indemnify them.  *See In re Polygon Global Partners LLP*, 2021 WL 1894733, at *6

(ordering the same regarding Providence Equity Partners).

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES KKR and Gallagher's motions to quash, but GRANTS the motion as to Carss.  The parties are instructed to meet and confer regarding a protective order, and to submit a proposed stipulated protective order for the Court's approval by June 15, 2021.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 18.


It is SO ORDERED.

Dated:    May 25, 2021
          New York, New York

_____
                    EDGARDO RAMOS, U.S.D.J.