

**LINDA H. MARTIN**
601 Lexington Avenue
31st Floor
New York, NY  10022
Tel: 212 277 4000
linda.martin@freshfields.com

October 15, 2021

<u>VIA ELECTRONIC COURT FILING</u>
The Hon. Edgardo Ramos,
United States District Judge
United States District Court for the Southern District of New York
40 Foley Square, Courtroom 619
New York, NY  10007

**MEMO ENDORSED**

Last page.

Re: *In re Polygon Global Partners, LLP*, No. 21-mc-00364 (S.D.N.Y.) (ER)

Dear Judge Ramos:

I write on behalf of KKR[1] to respectfully request permission to maintain the redactions that KKR applied to the publicly filed copy of a consortium agreement dated May 30, 2020 (the "**Consortium Agreement**"), which KKR filed as an exhibit (Dkt. No. 49-1) in support of its memorandum of law in opposition to Applicant's motion to compel information that KKR withheld as privileged (the "**Motion**," (Dkt. No. 45)).  A redacted copy of the Consortium Agreement filed as docket number 49-1 in the above-captioned miscellaneous proceeding is attached as **Exhibit A** hereto, and the information KKR redacted is highlighted in **Exhibit B** hereto, which is being filed under seal.

I. BACKGROUND

Applicant filed its Application on March 23, 2021, seeking discovery from KKR for use in the Spanish Proceedings. Following this Court's order of May 25, 2021, KKR produced documents to Applicant and, after completing production, produced a privilege log on September 17, 2021.

On October 8, 2021, Applicant filed the Motion, contending that, *inter alia*, KKR relied improperly on the common-interest doctrine to withhold attorney-client communications that include KKR and the two other shareholders in Lorca:  Providence and Cinven (together with KKR, the "**Investors**"). In support of its papers opposing the Motion, KKR filed the Consortium Agreement in redacted form.[2] The Consortium Agreement provides for cooperation in the legal encounters that the Investors would have with government regulators. Therefore, in its brief opposing the Motion, KKR cited to the Consortium Agreement to support its contentions that the Investors were joint clients subject to the same attorney-client privilege, and also to show that the Investors shared common legal interests sufficient to invoke the common-interest doctrine.

However, the Consortium Agreement also governs the Investors' joint evaluation and pursuit of the Transaction, and the Investors' respective rights and obligations with respect thereto.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in KKR's memorandum of law in support of its motion to quash, Dkt. No. 19.
[2] Because expedited briefing was required on Applicant's Motion, there was not an opportunity to seek permission to seal before KKR filed its opposition papers. KKR has filed the instant request as expeditiously as possible after filing its opposition papers.



Therefore, in addition to the provisions bearing on the Motion, the Agreement contains confidential, commercially sensitive information reflecting how KKR, its affiliates and affiliated funds evaluate, pursue and execute investments, *see* Ex. B §§ 5.2, 5.4-5.10, 6, 11, as well as sensitive information related to financial terms of the Transaction, *id.* at §§ 2-4, 9, 12, Schedule 2.

## II.  LEGAL STANDARD

While the common law right of public access to judicial documents is well respected, *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995), this right applies only to documents classified by the court as "judicial documents." *Id.* "The mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access"; the document "must be relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

Courts in this District allow not-at-issue contract provisions, pricing and similar information to remain sealed, since those documents may not qualify as judicial documents. *See Agrigenetics, Inc. v. Semillas Papalotla, S.A. de C.V.*, 2020 WL 763529, at *1 (S.D.N.Y. Feb. 14, 2020) ("Documents in this action which do not address . . . the meaning of the relevant contract provisions are not judicial documents subject to the right of public access.").

Moreover, even where the Court determines that a document is a judicial document, the analysis is not over.  The Court should then "determine the weight of that presumption [of public access]" and such weight "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119. After determining the weight of the presumption of access, the court must "balance competing considerations against it," including "the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120. Competitive commercial interests receive substantial weight as countervailing factors in this analysis. *See United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts.").

## III.  ARGUMENT

Although certain (unredacted) provisions in the Consortium Agreement are probative of the issues raised by the Motion, the redacted provisions of the Consortium Agreement contain competitively and commercially sensitive information that have no bearing on the Motion. Whatever minimal weight the presumption of access has with respect to these latter provisions—as measured by any value to the public from viewing such provisions—is outweighed by KKR's privacy interests.

In particular, KKR is an SEC-registered investment advisor that, along with its affiliates, sponsors funds that invest in, *inter alia*, private equity. *See* KKR & Co. Inc., Annual Report (Form 10-K), at 7-8 (Feb. 19, 2021).  KKR and its affiliates manage and sponsor, *inter alia*, "a group of private equity funds that invest capital for long-term appreciation, either through controlling ownership of a company or strategic minority positions." *Id.* at 8.

The redacted provisions in the Consortium Agreement provide information about KKR and the other Investors' business strategies, *see* Ex. B §§ 2-4, 5.2, 5.4-5.10, 11, 12, Schedule 2; reflect KKR's confidential business negotiations with the other Investors, *see id.* §§ 2-4, 5.2, 5.4-5.10, 6, 9-10, 11-13, Schedule 2; and contain confidential financial details internal to KKR and the other Investors, *see id.* at §§ 2-4, 9.



All such information is competitively sensitive and would prejudice KKR if it were publicly available to competitors here, including, for example, competitors seeking to make competing bids against KKR in public-to-private transactions like the MasMovil Transaction, or those seeking to leverage the Consortium Agreement to negotiate more favorable economic terms in their interactions with KKR. Moreover, courts in this district routinely allow redaction of information that, as here (1) reveals internal business strategies,[3] (2) reflects confidential business negotiations,[4] or (3) concerns internal financial business details.[5]

By contrast, KKR seeks only to redact provisions of the Consortium Agreement that are irrelevant to the Motion and thus, no public value is served by disclosing these terms of the Consortium Agreement.  *See Agrigenetics*, 2020 WL 763529, at *1 (granting motion to seal the not-at-issue contract provisions where the at-issue contract provisions were publicly filed).

Accordingly, KKR respectfully requests that the Court permit it to maintain the redactions that it applied to the publicly filed copy of the Consortium Agreement.

Respectfully,

/s/ *Linda H. Martin*

Linda H. Martin

CC: All Counsel of Record (via CM/ECF)

As Polygon has not objected, KKR's application is granted.

SO ORDERED.

_____
Edgardo Ramos, U.S.D.J
Dated: 10/20/2021
New York, New York

---

[3] *See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y.2015) (sealing "advertising expenditures. . . plans" and "merchandising strategies"); *GoSMiLE, Inc. v. Dr. Johnathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 650 (S.D.N.Y. 2011) (sealing "the defendants' marketing strategies, product development, costs and budgeting"); *Grand River Enters. Six Nations, Ltd. v. King*, 2009 WL 222160, at *3 (S.D.N.Y. Jan. 30, 2009) (sealing data that could be used to understand a party's current business strategies, strengths, and weaknesses).

[4] *See News Corp. v. CB Neptune Holdings, LLC*, 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) (sealing "[d]ocuments relate[d] to an acquisition," because the "economic terms and disputes over those terms could disadvantage Neptune in future acquisition-related negotiations with third parties."); *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 2021 WL 243943, at *2 (S.D.N.Y. Jan. 25, 2021) (sealing information concerning "patent licensing agreements, commercial development agreements, and subsequent amendments" because "disclosure of these confidential business contracts would likely result in competitive harm . . . in future negotiations of similar agreements with other parties"); *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412–13 (S.D.N.Y. 2015) (sealing "emails revealing confidential negotiations between Skyline and one of its customers").

[5] *See Kewazinga Corp. v. Microsoft Corp.*, 2021WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (sealing "details of Microsoft's sources of revenue and the amounts of its revenue and sales" and "specific revenue amounts from certain offerings"); *Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020) (sealing "sensitive business information of . . . active business units, such as the financial metrics"); *Playtex Prods., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (sealing "sales and revenue" figures "because Plaintiffs would be competitively harmed if they were revealed"); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, 2012 WL 3114855, at *16 (S.D.N.Y. July 31, 2012) (sealing "market forecasts, sales, inventory management, profit margins, etc.—the disclosure of which would cause competitive harm").