UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of POLYGON
GLOBAL PARTNERS LLP for an
Order Pursuant to 28 U.S.C. § 1782 to
Conduct Discovery for Use in a Foreign
Proceeding,

      Petitioner.

**OPINION & ORDER**

21 Misc. 364 (ER)

Ramos, D.J.:

  Petitioner Polygon Global Partners ("Polygon"), an investment fund manager, brought this action pursuant to 28 U.S.C. § 1782, seeking leave to serve subpoenas on the subsidiary of an American global investment company, Kohlberg Kravis Roberts & Co. LP ("KKR"), and two individuals, Jason Carss and Terrence Gallagher (collectively, "Respondents"). The Court granted Polygon's petition, and Respondents moved to quash the subpoenas. The Court denied the motion to quash as to KKR and Gallagher, but granted the motion as to Carss. Following the Court's order, KKR began producing documents, and provided a privilege log. That production is now complete. However, Polygon alleges KKR improperly withheld and redacted documents called for by Polygon's document subpoenas on purported privilege grounds. Polygon now moves to compel the production of documents withheld on privilege grounds. For the reasons discussed below, the motion is DENIED.

## I. BACKGROUND

### a. The Instant Application

  Polygon is an investment fund manager that manages $1.4 billion on behalf of investors. Doc. 12-5. It manages two funds that owned minority shares and swap interests in MasMovil, a

Spanish telecommunications company. Doc. 11 at 1. Polygon is currently challenging two decisions of the national Securities Market Authority (*Comisión Nacional del Mercado de Valores*, or "CNMV") regarding the takeover and subsequent delisting of MasMovil. These cases are pending in the National High Court of Spain (the "High Court").

Until recently, MasMovil was a public company domiciled in Spain. *Id.* at 3. On June 1, 2020, Lorca Telecom BidCo, S.A.U. ("Lorca") launched an offer for all the shares of MasMovil at 22.50 EUR per share. Doc. 21 at ¶ 8. Under Spanish law, a company proposing the delisting of its own shares from Spanish exchanges ordinarily would have to launch a mandatory takeover bid for the whole capital share of the company. *Id.* at ¶ 7. However, this is not necessary if a takeover bid has previously been made for the capital of the target company, and the company pursuing the bid: (1) clearly expresses its intention to pursue the delisting of the shares of the takeover target following completion of the bid; (2) justifies the price through a valuation report; and (3) offers a standing purchase order, at the same price as the takeover bid, for the sale of shares not already held by the bidder. *Id.* at ¶ 7. Lorca acquired and delisted MasMovil's shares through this latter approach (the "MasMovil transaction"). *Id.*

The CNMV authorized the takeover bid on July 29, 2020 (the "Takeover Decision"). *Id.* at ¶ 8. Lorca's offer was subsequently accepted by holders of approximately 86.4% of MasMovil's shares on September 19, 2020. *Id.* Following the standard purchase order at 22.50 EUR per share, holders of an additional 12.8% of MasMovil's share capital sold their shares, leaving Lorca as holder of approximately 99.2% of MasMovil's share capital. *Id.* at ¶ 9. MasMovil then approved the delisting of its shares from Spanish stock exchanges at a shareholder meeting held on October 26, 2020. *Id.* at ¶ 11. The same day, it sought

authorization from the CNMV to delist its shares. *Id.* The CNMV authorized this delisting on October 30, 2020 (the "Delisting Decision"). *Id.* at ¶ 12.

The CNMV's decisions are subject to judicial review. Polygon initiated two proceedings in the High Court: one challenging the CNMV's Takeover Decision, and one challenging its Delisting Decision. Polygon alleges that the CNMV violated Spanish law, including "by authorizing the takeover (1) at an inadequate price; (2) without adequately reviewing relevant background materials; (3) based on a superficial analysis of relevant valuation information; and (4) while failing to take into account certain conflicts of interest." Doc. 11 at 6.

On March 23, 2021, Polygon filed an application with this Court under Section 1782, seeking discovery from KKR for use in Polygon's proceedings against the CNMV in Spain. KKR is a member of a consortium of investment funds that acquired Lorca for the purpose of taking over and delisting MasMovil. Doc. 48 at 1, 1 n.1. The other consortium members are Providence Equity Partners L.L.C. ("Providence)" and Cinven Capital Management ("Cinven"). *Id.*

Polygon alleges that KKR was involved in analyzing and formulating the Lorca bid. Doc. 11 at 4. It also alleges that KKR was one of several signatories to certain "additional compensation" agreements with MasMovil shareholders, which are at issue in the Spanish Proceedings. *Id.* The Court granted Polygon's application on March 25, 2021, Doc. 14, pursuant to which Polygon served KKR with subpoenas seeking documents and a Rule 30(b)(6) deposition.

The subpoenas request a wide variety of information related to the valuation of the takeover, including: materials related to a PricewaterhouseCoopers ("PwC") valuation report

and a fairness opinion rendered by Goldman Sachs, documents relating to MasMovil board meetings concerning the transaction, and communications concerning MasMovil. *See* Doc. 18.

### i. KKR's Motion to Quash

On April 16, 2021, KKR moved to quash the subpoenas in their entirety. *See* Doc. 18. In its motion, KKR urged the Court to defer to a letter submitted by the CNMV requesting that the Court deny Polygon's application. Doc. 19 at 18; Doc. 20-2. In its letter, the CNMV opposed the application on two grounds: first, it stated that granting discovery would undermine the High Court's ruling regarding the relevance of similar documents sought by Polygon, and second, it argued that certain of the documents sought would be subject to a duty of secrecy under Spanish law, specifically Article 248 of Royal Legislative Decree 4/2015 ("Art. 248"). *See* Doc. 19 at 18-19; Doc. 20-2.

On May 25, 2021, the Court denied the motion to quash, finding that Polygon met § 1782's statutory requirements, and that the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) weighed in favor of discovery. Doc. 33 at 17-24. Specifically, the Court found that Polygon had "met its burden to show that the materials sought would be 'for use' in the Spanish Proceedings," and had "demonstrate[d] the 'practical ability' to place the documents in front of a foreign tribunal." *Id.* at 13-14. While the Court acknowledged the High Court "may ultimately find some or all of the evidence to be inadmissible," the Court made clear "this is the High Court's determination to make, not this Court's." *Id.* at 14. The Court concluded that Polygon "is entitled to make efforts to attach this information to their statement of claim in the Delisting Challenge" and, as a result, "is entitled to seek that information pursuant to § 1782." *Id.* As such, the Court denied KKR's motion, authorizing Polygon to serve its subpoenas. *See* Doc. 33.

In addition, the Court addressed both of the CNVM's concerns. As to the first concern, the Court made clear it is "not obligated to defer to the CNVM's characterization of the High Court's decision." Doc. 33 at 19. And as to the second concern, the Court noted that Respondents "have not shown any reason why this issue cannot be adequately addressed by a protective order," and that "KKR may still lodge objections based on privilege in the ordinary course." *Id.* at 19. The Court then instructed the parties to "negotiate a protective order that would cover materials that are protected by the duty of secrecy provided for in Article 248," and instructed KKR to "maintain a privilege log as necessary." *Id.* at 20.

Following that order, the parties met and conferred regarding the scope of discovery, and on June 16, 2021, the Court approved the parties' stipulated protective order. *See* Doc. 35. According to Polygon, KKR began producing documents in July 2021, and later provided a privilege log. Doc. 46 at 3. The production is now complete. *Id.* However, Polygon alleges KKR "improperly withheld and redacted documents called for by Polygon's document subpoena," *Id.*, and moved to compel production of information withheld by KKR as privileged and protected. *Id.* at 1.

### ii. Withheld Documents and Polygon's Motion to Compel

First, KKR withheld or redacted documents in its possession that reflect or discuss communications involving the CNMV. *See* Doc. 47-1. These include draft documents and email chains containing communications from the CNMV regarding the MasMovil transaction. *See id.* KKR argues documents concerning its communications with CNMV cannot be disclosed pursuant to Art. 248, and cites Art. 248 as a basis for privilege in its log. *See* Doc. 48 at 11; Doc. 47-1.

5

Second, KKR withheld communications that include as recipients third-party non-legal advisors, including investment banks Morgan Stanley, Barclays, and Deloitte, and public relations firms Sard Verbinnen and Tinkle.  *See* Doc. 47-1; Doc. 46 at 4.  KKR maintains the presence of these third-party advisors does not break attorney-client privilege, and that these communications are protected under Spanish professional secrecy law and lawyer-client privilege, as well as under U.S. law.  Doc. 48 at 23-25.

Third, KKR withheld documents reflecting (1) communications with other consortium members or their counsel; (2) communications with Lorca, the company the consortium formed to take over MasMovil, or its counsel; and (3) communications between KKR and its counsel that had been shared with Providence, Cinven, and or/ Lorca and their counsel.  *See* Doc. 47-1.  KKR alleges these documents are protected under Spanish law, namely Spanish professional secrecy and lawyer-client privilege, as well as U.S. law.  Doc. 48 at 17-23.

Polygon objects to the withholding of all three categories of communications.  *See* Doc. 46.  According to Polygon, on October 6, 2021, the parties met and conferred by telephone to discuss these disputes, but were unable to reach resolution.  Doc. 46 at 5.  As a result, on October 8, 2021, Polygon moved to compel the production of the aforementioned documents.  *See* Doc. 45.

**II.    DISCUSSION**

Polygon and KKR disagree as to whether Spanish law or U.S. law applies to the discovery disputes at issue here.  In its 325-page privilege log, produced on September 17, 2021, KKR cites a range of bases for withholding or redacting documents.  These include privilege and privacy doctrines under Spanish law, as well as privilege doctrines under U.S. law.  More

specifically, KKR lists Spanish professional secrecy, Art. 248, attorney-client privilege, and the common interest doctrine as privilege bases. *See* Doc. 47-1. As an example, "Professional Secrecy" appears in several hundred entries in KKR's privilege log. *See id.* In other words, as KKR writes, it "repeatedly invoked Spanish Law" in its log, and as a result Polygon "was aware that KKR intended to rely on Spanish professional secrecy law to withhold information from production." Doc. 59 at 1-2.

While Polygon makes several arguments related to the meaning and application of Art. 248 in seeking to compel KKR's communications with the CNMV, the remainder of its motion—namely, its arguments related to withheld communications involving third-party advisors and withheld communications among consortium members—is grounded in U.S. common law. *See* Doc. 46 at 17-25. Indeed, in setting out the applicable standard of review, Polygon contends its motion to compel "is governed by the Federal Rules of Civil Procedure and Local Rules, as well as ordinary principles governing privilege claims on duly issued subpoenas." *Id.* at 5. Polygon also notes that, "where . . . a privilege arising under foreign law is claimed, Federal Rule 44.1 further instructs that, to ascertain the content of foreign law, 'the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible.'" Doc. 46 at 6.

KKR, on the other hand, grounds its opposition to Polygon's motion in Spanish law. First, as to its communications with CNMV, KKR cites statements from a Spanish regulator, Article 248, and its own declaration by an expert on Spanish law to argue these communications are protected from disclosure. Doc. 48 at 10-12. Second, as to communications including non-legal third-party advisors, KKR cites to its Spanish law declaration, and maintains that federal common law does not apply. Doc. 48 at 23-24. Third, as to communications among the

7

consortium members and their counsel, KKR cites the "touch base" test, under which, KKR explains, a court must apply "the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether . . . communications should remain confidential . . ." *Id.* at 16 (citing *Mangouras v. Boggs,* 980 F.3d 88 (2d Cir. 2020)). Here, KKR argues, "none of the disputed communications took place in the US or addressed US law." *Id.* Rather, "they concern a consortium . . . formed to pursue a transaction based in Spain that required the approval of a Spanish regulator pursuant to Spanish law." *Id.* at 16-17. As a result, KKR argues, "Spanish privilege law applies." *Id.* at 17. Indeed, KKR continues, "[b]ecause there is no connection between the disputed communications and the US, it is highly unlikely that US law applies here." *Id.* In other words, KKR relies on Spanish privilege law as its principle basis for withholding all three categories of compelled communications.

In its reply, Polygon challenges KKR's application of Spanish law as to each of the three categories of withheld communications. First, Polygon rebuts KKR's interpretation of Art. 248, and argues it does not apply to or protect from disclosure communications with the CNMV. Doc. 56 at 2-3. Second, Polygon argues no other Spanish law privilege applies, and that KKR misunderstands and misapplies Spanish professional secrecy law. *Id.* at 4.

Several days after Polygon filed its reply, KKR wrote to the Court to request that Polygon's Spanish law arguments be stricken or, in the alternative, that it be allowed to submit a sur-reply to "address [Polygon's] new arguments of Spanish Law" and "correct the incomplete and incorrect contentions in the Reply Declaration." Doc. 59 at 1. The Court allowed KKR to submit its sur-reply.

What at first was a dispute as to which law governs the discovery issues in this case—Spanish or U.S.—has since become a dispute as to the proper interpretation and application of

Spanish law. First, the parties disagree as to the meaning and scope of Art. 248. Polygon argues "KKR's withholding of its CNMV communications under Art. 248 is wrong because, to begin, Art. 248 does not apply to private parties at all." Doc. 46 at 6. Polygon further argues that "Art. 248 merely requires [CNMV] and persons acting for it to maintain the secrecy of confidential information received by the CNMV." *Id.* In other words, "KKR cannot invoke Art. 248 as a discovery shield." *Id.* Polygon argues the "plain text of Art. 248 . . . makes clear that . . . Art. 248's restrictions cover only confidential information <u>received by the CNMV</u>, and imposes obligations only upon the CNMV and its employees, and not private parties." *Id.* at 7-8 (emphasis in original). As such, Polygon argues, "Art. 248 neither imposes any restriction—nor affords any privilege—upon regulated entities, let alone unregulated parties (such as KKR)." *Id.* at 8. In support, Polygon cites a number of Spanish authorities, including various Spanish decisions and treatises, as well as statements from the CNMV. *See id*. at 9-11.

On the other hand, KKR argues that Art. 248 *does* apply to private parties, not just to CNMV and its employees, but to "any person or entity that has carried out business for CNMV or has 'knowledge of classified information.'" Doc. 48 at 12. As a result, KKR argues, it "must keep confidential not only the non-public information it sent to the CNMV, but also any non-public information that has been subject to CNMV supervision and transmitted to KKR, including, in both cases, any documents concerning such information." *Id.* at 13.

Second, the parties disagree as to the application and meaning of Spanish privilege and professional secrecy law. As to communications among consortium members and their counsel, as well as communications involving third-party advisors, KKR argues these are protected from disclosure under Spanish professional secrecy law and lawyer-client privilege. Specifically, KKR argues that, under Spanish law "any oral or written communications, documents, or other

9

correspondence exchanged between a lawyer and client, lawyers who are adversaries in legal proceedings . . . , and other lawyers in the context of a lawyer-client relationship must be kept confidential." Doc. 48 at 17.  In other words, KKR explains, "[u]nder Spanish law, there need not be any common interest among parties, let alone a common legal interest, for communications among attorneys to be protected from disclosure." *Id.*

As KKR notes, the Spanish rule of professional secrecy is quite broad:  it applies to and can be asserted by both lawyers and clients, and it "'includes all the facts, communications, data, information, documents and proposals, that, as a professional lawyer, he/she has known, issued or received in his/her professional practice.'"  *Id.* at 17-18 (citing Royal Decree 135/201, March 2, 2021).  As a result, KKR argues, "legal communications amongst [consortium members] and their lawyers related to the [MasMovil transaction] . . . are protected by the duty of professional secrecy."  *Id.* at 18.

In addition, KKR argues the Spanish duty of professional secrecy also applies to "communications, information, and documents or other correspondence generated in the lawyer-client relationship, including those that were shared amongst [the Consortium members] and the non-legal advisors."  *Id.* at 23.  As KKR writes, "[t]his protection . . . applies to 'any information or particulars [lawyers] may be aware of in the course of their legal practice,' and to 'all types of services that the lawyer may provide in practicing the profession.'"  *Id.*  This protection "is so broad that it applies to 'communications between parties' when 'those communications contain the advice of a lawyer.'"  *Id.*  Under Spanish law, KKR continues, the "advisor is treated as an extension of the client."  *Id.* at 24.  As such, KKR argues, communications involving third-party non-legal advisors are properly withheld under Spanish law.  *Id.* at 24-25.

10

Polygon, in its reply, rejects KKR's interpretation of Spanish law, and instead argues that "[c]ontrary to KKR's *ipse dixit*, Spanish law makes plain 'professional secrecy' is a rule of conduct that applies only to attorneys," and "cannot be invoked as an evidentiary privilege by a client." Doc. 56 at 4 (emphasis in original). Polygon argues the "Spanish Constitutional Court has made this clear, as has the Madrid Bar." *Id.* at 4. Further, Polygon argues the "Spanish High Court has held the restrictions do not apply to communications with third-parties." *Id.*

In its sur-reply, KKR argues "professional secrecy forms part of a client's right to self-defense, which can be asserted by clients as a privilege against disclosure of confidential attorney-client communications." Doc. 64 at 3. In addition, KKR maintains this right to self-defense protects communications among consortium members and their counsel, as well as communications involving third-party advisors. *Id.* Here, KKR disputes Polygon's characterization of Madrid Bar and Spanish Court statements, and, in any event, argues these statements are "irrelevant," and the Spanish authorities on which Polygon relies are "inapposite." *Id.* at 4.

Polygon argues the Spanish doctrine of professional secrecy is distinct from the right to self-defense. Doc. 56 at 6. But, according to KKR, "[t]his argument fails as a matter of Spanish law." Doc. 64 at 5. Here, KKR cites the Supreme Court of Spain to argue that professional secrecy is a corollary of the client's right to self-defense. *Id.* KKR then argues the "Spanish courts have declared that it is *illegal* to collect information protected by professional secrecy and the right to self-defense." *Id.* at 6 (emphasis in original). According to KKR, "Spanish authorities are clear that (i) it is illegal to invade KKR's attorney-client communications, and (ii) doing so would improperly invade rights belonging to KKR." *Id.*

As the foregoing makes clear, these disputes require the Court to resort to analysis of foreign law, which the Second Circuit has repeatedly admonished. As the Second Circuit makes plain: "We think that it is unwise . . . for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting, and perhaps, biased interpretations of foreign law . . . ." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995). "Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the twin aims of the statute," and would involve a "speculative foray[] into legal territories unfamiliar to federal judges." *Id.* at 1099-1100; *see also In re Application of 000 Promnefstroy for an Ord. to Conduct Discovery for Use in a Foreign Proceeding*, Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) ("United States courts have neither the competency nor the time to fully understand a foreign legal system or how such a system might respond to § 1782 assistance from a United States court."); *In re Polygon Glob. Partners LLP*, No. 21 Misc. 364 (ER), 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021) ("Courts are discouraged from speculating about the accepted practices and attitudes of foreign nations."). Beyond this, the Second Circuit has warned that a district court should not entertain a "battle-by-affidavit of international legal experts" in order to determine how a foreign tribunal would treat certain evidence or discovery requests. *In re Application of Euromepa*, 51 F.3d at 1099; *see also In re Furstenberg Finance SAS*, 785 Fed. Appx. 882, 885 (2d Cir. 2019) (noting a "'battle-by-affidavit of international legal experts' that turns on a prediction of 'the procedural or substantive law of the foreign jurisdiction,' . . . is beyond the scope of a 1782 inquiry") (internal citations omitted); *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 n.11 ("We have warned that district courts should avoid inquiring into foreign evidentiary rules . . . so as to keep the

assessment of § 1782 applications from becoming a 'battle-by-affidavit of international legal experts'") (internal citations omitted).

Here, the parties are engaged in precisely such a battle. In an extensive back-and-forth, Polygon and KKR offer several conflicting interpretations of Spanish law—disputing not only the scope and application of Spanish law on a series of issues, but also its plain meaning—and have provided a number of declarations from a range of purported legal experts on Spanish law, many of whom offer inconsistent analyses of Spanish laws and doctrines. As the Second Circuit has made clear, it is not the role of the district court to attempt to discern the practices and attitudes of other nations from these "conflicting . . . interpretations of foreign law." *In re Application of Euromepa*, 51 F.3d at 1099. In other words, this Court "need not ascertain which party has the correct view of [Spanish] law," and should not intervene to resolve discovery disputes through analysis of unfamiliar, foreign law. *In re Republic of Kazakhstan for an Ord. Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015). In light of this, Polygon's motion to compel documents withheld as privileged is denied.

### III.     CONCLUSION

For the reasons set forth above, Polygon's motion to compel is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 45.

It is SO ORDERED.

Dated: October 29, 2021
       New York, New York

                                                  EDGARDO RAMOS, U.S.D.J.